1

2

3

4

5

6

7

8

9

10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

11

PABEL MARTINEZ,                    )   NO. CV 11-08683 SS

12                                  )
                  Plaintiff,       )

13                                  )
                  v.               )   **MEMORANDUM DECISION AND ORDER**

14                                  )
MICHAEL J. ASTRUE,                 )

15   Commissioner of the Social    )
     Security Administration,      )

16                                  )
                  Defendant.       )

17  _____)

18

19                              **I.**

20                         **INTRODUCTION**

21

22      Plaintiff Pabel Martinez ("Plaintiff") brings this action seeking

23   to overturn the decision of the Commissioner of the Social Security

24   Administration (hereinafter the "Commissioner") who denied his Title II

25   application for a period of disability and disability insurance

26   benefits, as well as his Title XVI application for supplemental security

27   income benefits.  This matter is before the Court after both parties

28   consented respectively to proceed before the undersigned United States

Magistrate Judge.  For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further proceedings.

## II.

### PROCEDURAL HISTORY

On February 2, 2009, Plaintiff filed a Title II application for a period of disability and disability insurance benefits and a Title XVI application for supplemental security income benefits. (Administrative Record ("AR") 150-58).  Plaintiff alleged disability beginning on June 1, 2002 due to a work-related back injury.  (AR 150, 180).  The claims were initially denied on May 1, 2009.  (AR 97-106).  Plaintiff then filed a written request for a hearing.  (AR 108-09).  On June 1, 2010, Plaintiff, represented by counsel, appeared and testified at the hearing before Administrative Law Judge ("ALJ") Christine Long.  (AR 53-75).  On July 30, 2010, the ALJ issued an unfavorable decision.  (AR 26-40).  On August 25, 2010, Plaintiff requested review of the ALJ decision by the Appeals Council.  (AR 23).  The Appeals Council denied review on August 25, 2011.  (AR 1-6).  Thus, the ALJ's decision became the final decision of the Commissioner.  Plaintiff filed the instant action on October 24, 2011.

## III.

### FACTUAL BACKGROUND

Plaintiff was born on April 28, 1967.  (AR 54).  Plaintiff was forty-three years old at the time of the hearing and thirty-five at the time of the disability onset date.  (AR 54, 180).  He is literate and

2

able to communicate in English.  (AR 55, 179-80).  He completed school through eighth or perhaps tenth grade, but has a fifth or sixth grade reading comprehension level.  (AR 55, 186).  Plaintiff's past work experience includes work as a forklift driver, hand cutter, warehouse worker, hand packager, and hardware assembler.  (AR 57-64).  Plaintiff claims he is unable to work due to his back injury, arthritis, diabetes, high blood pressure, cholesterol, and nerves.  (AR 180).  Plaintiff had terms of disability insurance through September 2006.  (AR 49).

**A.    Relevant Medical History**

Plaintiff has not worked since suffering a work-related back injury on June 1, 2002.  (AR 180).  Plaintiff has seen various doctors at the Bellflower Health Center and the Harbor-UCLA Medical Center for treatment.  (AR 225, 228, 306).  Doctors initially diagnosed Plaintiff with diabetes mellitus, hypertension, low back pain, right shoulder pain, and right knee pain from a possible meniscus tear.  (AR 208-11).  After an x-ray in July 2008, doctors determined that early, mild degenerative changes of the acromyioclavicular joint and humeroglenoid joint caused Plaintiff's right shoulder pain.  (AR 246, 316).

In January 2009, an x-ray showed a tear of the anterior horn and body of the lateral meniscus in Plaintiff's right knee.  (AR 278).  Also, an MRI of the lumbar spine showed degenerative changes at the L5-S1 disc in Plaintiff's back causing bilateral neural foraminal stenosis and bilateral spondylolysis.  (AR 276).  Doctors described the back disc as bulging with some fat along the exiting nerve roots.  (AR 277).

3

In April 2009, a nurse practitioner assessed cellulitis, diabetes, obesity, and chronic pain. (AR 295). In June 2009, Plaintiff had an unrelated portable chest AP for shortness of breath with normal results. (AR 323). Also, Plaintiff was hospitalized for unrelated scrotal abscess. (AR 322). The hospital discharged Plaintiff in good condition. (Id.). A subsequent x-ray in July 2009 revealed that degenerative joint disease with osteophytes, subchondral sclerosis, and subchondral cysts caused Plaintiff's low back and hip pain. (AR 275).

All doctors who treated Plaintiff during the above described time period prescribed physical therapy and various medications. (AR 232, 288, 291, 296, 311-14, 336). Physical therapy began in August 2009. (AR 311). Plaintiff was prescribed medications, such as insulin for diabetes mellitus, Oscal 500/200 for degenerative joint disease, Hydrochlorothiazide, Lisinopril and Metropolol for hypertension, and Neurontin for diabetic neuropathy, among other medications. (AR 288, 322, 344, 346, 351, 354).

Plaintiff's treating physician, Dr. Alexander Moy, ordered initial tests in July 2009. (AR 275, 282, 319). Dr. Moy adopted the nurse practitioner's findings from her July and October 2009 examinations of Plaintiff. (AR 288-93). In July, the nurse practitioner noted that Plaintiff was scheduled for physical therapy in August 2009. (AR 291). Further, the nurse practitioner assessed, as other doctors had previously, degenerative joint disease, cellulitis with a history of abscess, hypertension and low back pain. (AR 288, 291). She recommended that Plaintiff take Tylenol #3 instead of Vicodin and Ibuprofen. (Id.). In January 2010, the nurse practitioner examined

4

1  Plaintiff again and added depression to the diagnosis.  (AR 326).  She
2  subsequently prescribed Zoloft.  (Id.).

3

4      Dr. Moy diagnosed Plaintiff with degenerative joint disease at L5-
5  S1 with a disc bulge, bilateral neural formal stenosis with pain and
6  numbness down the right leg, nerve impingement, and impaired ambulation.
7  (AR 302).  Dr. Moy indicated that Plaintiff had an abnormal gait,
8  sensory loss, muscle spasms, muscle weakness, and impaired sleep.  (AR
9  303).  Dr. Moy completed a Lumbar Spine Residual Functional Capacity
10 Questionnaire ("RFC Questionnaire").  (AR 302-05).  Concerning
11 Plaintiff's ability to work, Dr. Moy opined that Plaintiff's symptoms
12 would interfere with his attention and concentration needed to perform
13 simple work tasks.  (AR 303).  The symptoms limited Plaintiff to lifting
14 ten pounds occasionally, sitting for no more than thirty minutes at one
15 time, and standing for no more than forty-five minutes at one time.  (AR
16 303-04).  During an eight-hour workday, Plaintiff could sit, stand, or
17 walk less than two hours total.  (AR 304).  Plaintiff could not twist,
18 stoop, crouch, nor climb ladders.  (AR 305).  Plaintiff could rarely
19 climb stairs.  (Id.).  Dr. Moy opined that Plaintiff would have to be
20 absent from work at least four days per month.  (Id.).

21

22 **B.   <u>Plaintiff's Testimony</u>**

23

24     Plaintiff testified as to the nature, intensity, frequency,
25 persistence, and limiting effects of his physical symptoms.  (AR 53-75).
26 Plaintiff explained that after the back injury, he filed a worker's
27 compensation case, which settled in 2002 or 2003.  (AR 57-8)

28

1    Plaintiff asserted that he has poor reading, writing, and spelling
2  ability and cannot sit, stand, or walk for extensive periods of time.
3  (AR 55, 168, 180).  He has trouble sleeping due to his back pain.  (AR
4  180).   Frequently,  his  joints  will  pop,  his  arthritis  will  be
5  aggravated, and the nerves in his legs will twitch making it difficult
6  to work.  (Id.).  Plaintiff testified that he has numbness in his right
7  leg.  (AR 64).  Plaintiff stated that his medication helps him a little,
8  but also makes him drowsy.  (AR 67, 74).  When describing a typical day,
9  Plaintiff stated that he spends most of the day sitting, laying down,
10 standing, watching television, reading, and attempting exercise.  (AR
11 69-70).

12

13 **C.    Vocational Expert's Testimony**

14

15    Frank Thomas Corso, Jr., a vocational expert ("VE"), assessed and
16 analyzed Plaintiff's past work experience according to the Dictionary of
17 Occupational Titles.  (AR 82, 84).  The VE determined that Plaintiff has
18 worked  as  a  forklift  driver,  hand  cutter,  warehouse  worker,  hand
19 packager, and hardware assembler.  (AR 82-83).  Assuming that Plaintiff
20 could lift and carry 20 pounds occasionally, ten pounds frequently,
21 could sit for six hours in an eight-hour day, and stand and walk two
22 hours in an eight-hour day, the VE testified that Plaintiff could not
23 perform his past work.  (AR 83-84).  However, based on these same
24 limitations, the VE testified that Plaintiff could perform jobs in the
25 national economy, such as a final assembler, sorter, or painter.  (AR
26 84).  Assuming that Plaintiff could lift and carry only ten pounds
27 occasionally, ten pounds frequently, could sit for six hours in an
28 eight-hour day, stand and walk 30 minutes at a time and two hours total

1 in an eight-hour day, and would require frequent absences from work of
2 at least four per month, the VE testified that Plaintiff would not be
3 able find competitive employment.  (AR 84-85); (AR 85) ("And it would be
4 the absences that would preclude -- four times a month, that's excessive
5 absences.  That would preclude competitive employment.").

## IV.

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[1] and that is expected to result in death or to last for a continuous period of at least twelve months.  Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A)).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

---

[1]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

7

(1)   Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.

(2)   Is the claimant's impairment severe?   If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled. If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.   If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the

8

1 claimant's residual functional capacity ("RFC"),[2] age, education, and
2 work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at
3 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may
4 do so by the testimony of a vocational expert or by reference to the
5 Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart
6 P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240
7 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional
8 (strength-related) and nonexertional limitations, the Grids are
9 inapplicable and the ALJ must take the testimony of a vocational expert.
10 Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

**V.**

**STANDARD OF REVIEW**

15   Under 42 U.S.C. § 405(g), a district court may review the
16 Commissioner's decision to deny benefits.  The court may set aside the
17 Commissioner's decision when the ALJ's findings are based on legal error
18 or are not supported by substantial evidence in the record as a whole.
19 Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v.
20 Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

22   "Substantial evidence is more than a scintilla, but less than a
23 preponderance."  Reddick, 157 F.3d at 720.  It is "relevant evidence
24 which a reasonable person might accept as adequate to support a
25 conclusion."  (Id.).  To determine whether substantial evidence supports

———————————

27      [2]   Residual functional capacity is "what [one] can still do
despite [his] limitations" and represents an "assessment based upon all
28 of the relevant evidence."  20 C.F.R. §§ 404.1545(a), 416.945(a).

9

1  a finding, the court must "'consider the record as a whole, weighing
2  both evidence that supports and evidence that detracts from the
3  [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny
4  v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)).  If the evidence can
5  reasonably support either affirming or reversing that conclusion, the
6  court may not substitute its judgment for that of the Commissioner.
7  Reddick, 157 F.3d at 720-21.

8
9                                    **VI.**
10                          **THE ALJ'S DECISION**
11

12      The ALJ relied on the five-step evaluation process to conclude that
13  Plaintiff is not disabled.  The ALJ determined that Plaintiff has not
14  engaged in substantial gainful activity since June 1, 2002, which is the
15  alleged disability onset date.  (AR 31).  The ALJ found that Plaintiff
16  has severe impairments of degenerative disc disease of the lumbosacral
17  spine with stenosis, degenerative joint disease of the right shoulder
18  and right hip, and diabetes mellitus with neuropathy.  (Id.).  The ALJ
19  explained that these impairments restrict Plaintiff's ability to do
20  basic work activities.  (AR 32).  Further, the ALJ concluded that these
21  impairments do not meet one of the listed impairments in 20 C.F.R. Part
22  404, Subpart P, Appendix 1.  (Id.).

23
24      The ALJ found that Plaintiff has the RFC to perform sedentary work
25  as defined in 20 C.F.R. § 404.1567(a) and 416.967(a).  (AR 32).  The ALJ
26  specified that Plaintiff is restricted to lifting and carrying no more
27  than twenty pounds occasionally and ten pounds frequently; sitting six
28  hours in an eight-hour workday; standing and walking two hours in an

eight-hour workday; occasionally balancing, stooping, kneeling, crouching, crawling and climbing stairs and ramps; cannot climb ladders, ropes or scaffolds; and cannot reach overhead with the right upper extremity more than frequently. (Id.). Finally, although the ALJ determined that Plaintiff could not perform his past work, after taking into account the VE's testimony, the ALJ concluded that Plaintiff could perform sedentary jobs in the national economy. (AR 35-36). These sedentary jobs included working as a final assembler, sorter, or painter. (AR 36). Accordingly, the ALJ found that Plaintiff is not disabled. (Id.).

## VII.

### DISCUSSION

Plaintiff contends that the ALJ erred by rejecting the uncontradicted opinion of Plaintiff's treating physician, Dr. Moy. (Plaintiff's Memorandum in Support of Complaint ("Complaint Memo.") at 5-8; Plaintiff's Reply ("Reply") at 3-8). The Court agrees.

**The ALJ Failed To Provide Clear And Convincing Reasons To Reject The Treating Physician's Opinion**

The opinions of treating physicians are entitled to special weight because the treating physician is hired to cure and has a better opportunity to know and observe the claimant as an individual. See Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989). "Where a treating physician's opinion is not contradicted by another doctor, it may be rejected only for clear and convincing reasons." Connett v.

1  Barnhart, 340 F.3d 871, 874 (9th Cir. 2003).  The Ninth Circuit has

2  "also held that clear and convincing reasons are required to reject the

3  treating doctor's ultimate conclusions." Lester v. Chater, 81 F.3d 821,

4  830 (9th Cir. 1996) (internal quotation marks omitted).

5

6       Here, Dr. Moy completed an RFC Questionnaire in which he diagnosed

7  Plaintiff with degenerative joint disease at L5-S1 with a disc bulge,

8  bilateral neural formal stenosis with pain and numbness down the right

9  leg, nerve impingement, and impaired ambulation.  (AR 302).  Dr. Moy

10  indicated that Plaintiff had an abnormal gait, sensory loss, muscle

11  spasms, muscle weakness, and impaired sleep.  (AR 303).  Dr. Moy opined

12  that Plaintiff's symptoms would interfere with his attention and

13  concentration needed to perform simple work tasks.  (AR 303).  Dr. Moy

14  concluded that Plaintiff's symptoms would limit him to lifting ten

15  pounds occasionally, sitting for no more than thirty minutes at one

16  time, and standing for no more than forty-five minutes at one time.  (AR

17  303-04).  Dr. Moy believed that during an eight-hour workday, Plaintiff

18  could sit, stand, or walk less than two hours total, (AR 304), and could

19  not twist, stoop, crouch, nor climb ladders.  (AR 305).  Finally, Dr.

20  Moy opined that Plaintiff would have to be absent from work at least

21  four days per month.  (Id.).

22

23       The Commissioner concedes that "there was no other medical source

24  contradicting Dr. Moy's opinion." (Memorandum in Support of Defendant's

25  Answer ("Answer Memo.") at 8).[3]  Thus, the ALJ was required to provide

26

27       [3] The findings of the single decisionmaker, (AR 197-202), do not
qualify as a medical opinion because single decisionmakers are not
28  medical consultants.  See 20 C.F.R. § 404.906(b)(2).  Moreover, the

1  clear and convincing reasons to reject Dr. Moy's opinion. <u>See</u> <u>Connett</u>,
2  340 F.3d at 874.   The ALJ initially noted that "[t]he diagnostic
3  impression of Claimant's treating physician Alexander Moy, M.D. is
4  consistent with" the other evidence in the record.   (AR 33).   However,
5  the ALJ later declined to give "controlling weight" to Dr. Moy's opinion
6  in the RFC Questionnaire.   (AR 34).   First, the ALJ noted that "Dr. Moy
7  is Board certified in family practice and not orthopedics which detracts
8  from the weight accorded to his opinion." (<u>Id.</u>).   Second, the ALJ found
9  that Dr. Moy's "questionnaire responses and progress notes provide few
10 objective findings and no referral to an orthopedic specialist." (<u>Id.</u>).

12     The Court concludes that the ALJ failed to provide clear and
13 convincing reasons to reject Dr. Moy's opinion.   As an initial matter,
14 the fact that Dr. Moy is Board certified in family practice instead of
15 orthopedics justifies giving his opinion less weight than a contrary
16 opinion from an orthopedic specialist, but is not a "clear and
17 convincing reason" to reject his opinion in the complete absence of a
18 contrary medical source. <u>See</u> 20 C.F.R. §§ 404.1527(c)(5), 416.927(c)(5)
19 ("We generally give more weight to the opinion of a specialist about
20 medical issues related to his or her area of specialty than to the
21 opinion of a source who is not a specialist.").

23     With regard to the ALJ's assertion that Dr. Moy's RFC Questionnaire
24 and progress notes "provide few objective findings," (AR 34), the Court

26
27 Commissioner's policy statements direct that RFC forms completed by
   single decisionmakers "are not opinion evidence at the appeal levels."
   <u>See</u>   POMS   DI   24510.0501,   <u>available   at</u>
28 https://secure.ssa.gov/poms.nsf/lnx/0424510050.

1  concludes that Dr. Moy's findings are well supported by objective
2  medical evidence in the record.  For example, an MRI taken on January
3  22, 2009 confirms the presence of bilateral spondylolysis at L5-S1 and
4  loss of disc signal and height consistent with degenerative disease.
5  (AR 276).  An MRI taken on January 29, 2009 confirms the presence of a
6  tear with a vertical component extending into the body in the anterior
7  horn of the lateral meniscus.  (AR 278).  Indeed, as noted above, the
8  ALJ conceded that "[t]he diagnostic impression of Claimant's treating
9  physician Alexander Moy, M.D. is consistent with the previously
10 mentioned diagnostic findings."  (AR 33).

12      Regardless, even if Dr. Moy's opinion was not well supported by
13 objective medical evidence, which it is, this would only be a reason to
14 not give Dr. Moy's opinion "controlling weight," but it would not be a
15 clear and convincing reason to reject his opinion.  Indeed, Social
16 Security Ruling 96-2p states in relevant part as follows:

18      Adjudicators must remember that a finding that a treating
19      source medical opinion is not well-supported by medically
20      acceptable clinical and laboratory diagnostic techniques or is
21      inconsistent with the other substantial evidence in the case
22      record means only that the opinion is not entitled to
23      "controlling weight," not that the opinion should be rejected.
24      Treating source medical opinions are still entitled to
25      deference and must be weighed using all of the factors
26      provided in 20 C.F.R. 404.1527 and 416.927.  In many cases,
27      a treating source's medical opinion will be entitled to the
28

14

greatest weight and should be adopted, even if it does not meet the test for controlling weight.

S.S.R. 96-2p at 4 (Cum. Ed. 1996), available at 61 Fed. Reg. 34,490, 34,491 (July 2, 1996); see also Orn v. Astrue, 495 F.3d 625, 631-32 (9th Cir. 2007). Thus, even if Dr. Moy's opinion was not well supported, it would still be entitled to deference and must be weighed using the factors in 20 C.F.R. §§ 404.1527 and 416.927.

With regard to the ALJ's reliance on the fact that Dr. Moy did not refer Plaintiff to an orthopedic specialist, (AR 34), Plaintiff testified that he wanted to have surgery on his back, but that his doctors "refused because of [his] medical condition." (AR 58) ("They said I need it, but they refused because of my medical condition."). Moreover, the record shows that Plaintiff declined further treatment because he was living on General Relief and could not afford to pay. (AR 311); see also Orn, 495 F.3d at 638 ("[D]isability benefits may not be denied because of the claimant's failure to obtain treatment he cannot obtain for lack of funds." (internal quotation marks omitted)). Plaintiff also stated that he had trouble getting to appointments and therapy sessions because he had to borrow a friend's car which needed to be quickly returned. (Id.).

In sum, the Court concludes that the ALJ failed to provide clear and convincing reasons to reject Dr. Moy's opinion. This is especially true because "there was no other medical source contradicting Dr. Moy's opinion." (Answer Memo. at 8). As set forth above, the VE testified that if Dr. Moy's proffered limitations were accepted, Plaintiff would

1 not be able to obtain competitive employment. (AR 84-85). Remand for
2 further proceedings is appropriate because additional proceedings could
3 remedy defects in the Commissioner's decision. <u>See</u> <u>Harman v. Apfel</u>, 211
4 F.3d 1172, 1179 (9th Cir. 2000); <u>Kail v. Heckler</u>, 722 F.2d 1496, 1497
5 (9th Cir. 1984). On remand, the ALJ must either provide sufficient
6 clear and convincing reasons to reject Dr. Moy's opinion, or she must
7 credit that opinion and award benefits. The Court notes that the ALJ
8 may wish to obtain the opinion of a consultative doctor which could then
9 be weighed in the consideration of the entire record, including Dr.
10 Moy's findings.

11

12                                    **VIII.**

13                                 **CONCLUSION**

14

15     Consistent with the foregoing, IT IS ORDERED that judgment be
16 entered REVERSING the decision of the Commissioner and REMANDING this
17 matter for further proceedings consistent with this decision. IT IS
18 FURTHER ORDERED that the Clerk of the Court serve copies of this Order
19 and the Judgment on counsel for both parties.

20

21 DATED: July 13, 2012.

22                                         /S/
                                _____
23                              SUZANNE H. SEGAL
                                UNITED STATES MAGISTRATE JUDGE
24

25

26

27

28